## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE SANTIAGO VERA | : | |
| Petitioner | : | No. 3:11-cv-00864-VAB |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| Respondent | : | |
| | : | |

## RULING ON PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Jose Santiago Vera ("Petitioner") filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  On October 27, 2006, a jury convicted Mr. Vera of (1) conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and (2) possession of heroin with intent to distribute, and aiding and abetting of the same, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  The Second Circuit affirmed the conviction on direct appeal, *United States v. Vera*, 362 Fed. App'x. 199 (2d Cir. Jan. 27, 2010), and the United States Supreme Court denied his petition for certiorari review. *Vera v. United States*, 130 S. Ct. 3341 (2010).

Mr. Vera puts forth seven separate claims for ineffective assistance of counsel and violation of his constitutional rights. For the reasons set forth below, Mr. Vera's motion is DENIED.

## I.   Factual and Procedural Background

### A.  Pretrial and Trial Proceedings

On August 2, 2005, a grand jury in New Haven indicted Mr. Vera and twenty-four other individuals and charged them with various narcotics offenses.  *See* Indictment in 3:05-

cr-00195-MRK, ECF No. 18.  After Mr. Vera's August 22, 2005 arraignment, Mr. Peter J. Schaffer, Esq., a member of the District's CJA panel, represented him.[1]

On February 8, 2006, Mr. Schaffer filed a motion to sever Mr. Vera's trial from his co-defendants who were charged with cocaine possession, but did not move to sever Mr. Vera's trial from co-defendant Eduardo Casiano specifically.  *See* Mot. to Sever in 3:05-cr-00195-MRK, ECF No. 488.  This Court denied this motion as moot on September 28, 2006, after several co-defendants entered guilty pleas.  *See* Order in 3:05-cr-00195-MRK, ECF No. 861.

Mr. Schaffer then withdrew from representing Mr. Vera and Mr. Todd Bussert, Esq., assumed the role of Mr. Vera's counsel.  *See* ECF No. 715 in 3:05-cr-00195-MRK. Eventually, all defendants pled guilty, except Mr. Casiano and Mr. Vera.  The Court tried Mr. Vera and Mr. Casiano jointly.  At trial, Mr. Vera claimed that he was innocent of any heroin charges because he only supplied Mr. Casiano with marijuana.  Mr. Casiano did not testify.

On October 27, 2006, the jury found Mr. Vera guilty of conspiracy to possess with intent to distribute 100 grams or more of heroin and possession with intent to distribute 100 grams of heroin.  The jury also found Mr. Casiano guilty.  *See* Jury Verdicts, ECF No. 918-19 in 3:05-cr-00195-MRK.

Mr. Vera appeared for sentencing on March 21, 2007.  *See* Joint Mot., ECF No. 1146 in 3:05-cr-00195-MRK.  The United States (the "Government") presented evidence in support of its recommended sentence, but the Court did not sentence Mr. Vera on that day. *Id.* at 2.

---

[1] Mr. Vera's appeared before Judge Kravitz for his trial and sentencing proceedings.  On October 25, 2012, the case was transferred to Judge Arterton, who reviewed and granted Mr. Vera's 2015 motion to reduce sentence under 18 U.S.C. §3582(C)(2).  *See* Order of Transfer, ECF No. 1485 in 3:05-cr-00195-MRK. Judge Kravitz initially presided over Mr. Vera's habeas petition, which was transferred to Judge Underhill on October 15, 2012, *see* Order of Transfer, ECF No. 27, and transferred again to Judge Bolden on January 26, 2015, *see* Order of Transfer, ECF No. 32.

One of the jurors who had found Mr. Vera and Mr. Casiano guilty attended the March 21st hearing. *Id.* On March 30, the Court received a letter from that juror, which it distributed to both defendants and the Government. *See id.* at 2 (citing Letter, Ex. 1). The letter stated:

> Had I been a jury of one, after the conclusion of the evidence, Mr. Vera would have been not guilty and Mr. Casiano would have been guilty of conspiracy to distribute and/or sell under 500 grams of heroin. During deliberations, after discussion of the instructions, unanimous verdicts were reached.

*Id.* The juror also expressed disappointment with Mr. Vera's guidelines sentencing range and the Government's evidence at the sentencing hearing. *Id.*

Mr. Casiano and Mr. Vera jointly moved for the Court to conduct an *in camera* inquiry of the juror, arguing that the "tone and tenor [of the letter] call the validity of the verdict into question." Joint Mot., 2. The Court denied the motion, concluding that "[i]n short, there are no circumstances suggested by Juror # 2's letter that would permit any legitimate inquiry of any juror under Rule 606(b) or relevant case law." *See* Order in 3:05-cr-00195-MRK ECF No. 1168, 7.

Mr. Vera's sentencing proceedings continued at a hearing on April 9, 2007. At the hearing, Mr. Bussert revealed that his predecessor counsel had received a letter from Mr. Casiano in which he sought to exculpate Mr. Vera on the heroin charge. Specifically, Mr. Bussert said:

> MR. BUSSERT: Mr. Vera will be speaking, and I wanted to say [that] I advised him that I would do this, my customary practice is to have some sense going in what the client wants to say, particularly in a situation like this, where any comments that Mr. Vera might make could potentially jeopardize his appellate rights, I don't know specifically what he's going to say and so if the Court wants to remind him as well, that would be welcome.
>
> THE COURT: Yes, I would like to do that.
>
> MR. BUSSERT: He will speak in a moment, I believe. … [B]efore I get to my comments, [Mr. Vera] wanted me to note for the record that Mr. Casiano had actually sent a letter []to Peter Schaffer, I believe Mr. Schaffer was still

> Mr. Vera's trial counsel, that was forwarded to me, generally stating that
> Mr. Vera was not involved in any of the alleged activities and supporting
> his innocence. We just wanted to say that for the record.

*Id.* at 33-34.

The letter itself was never entered into evidence. In a declaration dated February 28,

2012, Mr. Bussert indicated that, while he did not recall receiving the letter from Mr.

Casiano, he would not have called him as a witness, assuming availability, as a matter of

strategy. Dec. of Todd A. Bussert, ECF No. 26, at 2-3. Specifically, Mr. Bussert advised:

> Even if I had possessed a letter from Mr. Casiano . . . I do not believe I would
> have called Eduardo Casiano to testify for the defense, assuming arguendo that
> he was an available witness . . . . Given my familiarity with the government's
> evidence, most notably the Title III intercepts of Mr. Casiano's telephone, I do
> not believe that Mr. Casiano would have presented as a credible witness. If
> anything, calling Mr. Casiano to testify would have risked undermining Mr.
> Vera's defense inasmuch as it would have afforded government's counsel the
> opportunity to cross-examine Mr. Casiano and have him elucidate on calls
> between him and Mr. Vera which, from my perspective, were vague and non-
> specific (i.e., they did not refer directly to heroin) and, therefore, [were] helpful
> (or, at least, not overtly detrimental) to the defense['s theory of the case].

*Id.*

At the time of sentencing, the Court found that the offense involved at least 700

grams, but less than one kilogram, of heroin, which resulted in a base offense level of 30

under the United States Sentencing Guidelines, specifically USSG 2D1.1(c)(5). *See*

Transcript, Ex. 1 to Amend. Pet. Writ Hab. Corp., ECF No. 28-1, 58:11-15. The Court

decided that no other adjustments were appropriate. *Id.* The Court then determined that Mr.

Vera's criminal history category was IV, which resulted in a guideline imprisonment range of

135 to 168 months. *See* Ruling Granting Mot. in 3:05-cr-00195-MRK, ECF No. 1514. The

Court sentenced Mr. Vera to a term of 160 months of incarceration, which was within the

Sentencing Guidelines range. *Id.*

On February 20, 2015, Mr. Vera moved to reduce his sentence under 18 U.S.C. §

3582(C)(2). Mot. in 3:05-cr-00195-MRK, ECF No. 1511. On March 25 of that year, the

Court granted Mr. Vera's motion and reduced his term of imprisonment to 130 months.  *See*
Ruling Granting Mot**.** in 3:05-cr-00195-MRK.  On November 2, 2015, the Bureau of Prisons
released Mr. Vera from its custody.  *See* Fed. Bureau Prisons, Inmate Locator Service,
*available at* https://www.bop.gov/inmateloc/ (last visited June 3, 2017).[2]

### B.  Mr. Vera's Habeas Petition

On May 25, 2011, Mr. Vera, proceeding *pro se*, filed a timely motion to vacate, set
aside, or correct his sentence ("habeas petition").  *See* Motion and Memorandum of Law in
Fact In Support of Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No.
1-2.  Mr. Vera claimed that: (1) his appellate counsel was ineffective by "fail[ing] to
challenge the sufficiency and accuracy of [the trial] transcript;" (2) his appellate counsel was
ineffective by "fail[ing] to challenge the district court's drug quantity finding[s];" (3) both his
trial and appellate counsel were ineffective by "fail[ing] to file a motion for new trial . . .
where the district court received a letter from a juror stat[ing] that had the juror been a juror
of one she would have acquitted Mr. Vera;" (4) the Government violated his constitutional
rights by failure to comply with its obligations under 18 U.S.C. § 3500 (the "Jencks Act");
(5) both his trial and appellate counsel were ineffective by "fail[ing] to file a motion for new
trial, on the basis of newly discovered evidence, . . . [involving the receipt of] a letter from
Eduardo Casiano" exculpating Mr. Vera; (6) both his trial and appellate counsel were
ineffective by not challenging the sufficiency of the evidence adduced at trial; and (7) both

---

[2] The Court takes judicial notice of the results of the inmate locator search.  *Glover v. Connecticut Dep't of Correction*, 575 F. Supp. 2d 390, 392 (D. Conn. 2008) (observing in ruling on habeas petition that "[t]he Court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'") (citing Fed. R. Evid. 201(b)(2)).; *see also Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009) ("The BOP maintains an Inmate Locator Service, accessible through the BOP's official Internet website, which enables the public to track the location of federal inmates.  The Court is permitted to take judicial notice of information on the Inmate Locator Service."); *Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 390 (E.D.N.Y. 2010) ("Because Plaintiff's confinement status is available publicly on the DOC website, the Court takes judicial notice of the fact that Plaintiff was released from the custody of the DOC on August 9, 2007.").

his trial and appellate counsel were ineffective by failing to claim that Mr. Vera received an unduly harsh sentence as retaliation for his decision to stand trial. *See id.*

Mr. Vera then requested the Court to appoint counsel. *See* Mot. Appoint Counsel, ECF No. 5. The Court appointed Gary Weinberger, Esq. *See* Order, ECF No. 8. Mr. Weinberger, on behalf of Mr. Vera, moved to amend the fifth of his seven claims. *See* Motion, ECF No. 14. After the motion was granted, Mr. Vera filed an Amended Petition for Writ of Habeas Corpus, dated January 3, 2012. *See* Order, ECF No. 15. In this petition, Mr. Vera "amend[ed] claim 5 of his previous petition to allege that his trial counsel was ineffective by failing to file a motion for severance under Federal Rule of Criminal Procedure 14 from Eduardo Casiano on the basis of Mr. Casiano's willingness, as evidenced by his letter, to exculpate Mr. Vera." Amend. Pet. Writ Hab. Corp., ECF No. 28, at 2. Mr. Weinberger took no position on the merit of the six remaining claims, but noted that none appeared to him to warrant either an evidentiary hearing or the appointment of counsel. *Id.* Mr. Weinberger withdrew as counsel for the remaining six claims and left Mr. Vera to pursue them *pro se*. *Id.*

In a letter dated April 12, 2013, Mr. Vera wrote to the Clerk of the Court seeking termination of Mr. Weinberger and the appointment of new counsel. *See* Mot. to Withdraw, ECF No. 29. Mr. Weinberger then moved to be relieved of representation on April 23, 2013. *Id.* In his motion, Mr. Weinberger reiterated his belief that Mr. Vera's six remaining claims did not appear to warrant an evidentiary hearing. *Id.* at 2.

When he moved to withdraw, Mr. Weinberger addressed Mr. Vera's fifth claim. *Id.* He explained that this claim "seem[ed] doomed to fail regardless of the conducting of an evidentiary hearing," because even if Mr. Vera could establish that his trial attorney received the letter and was ineffective in failing to move to sever Mr. Vera's case from Mr. Casiano's, he would not be able to show that the decision would be reasonably likely to change the

6

outcome of Mr. Vera's case.  Mot. to Withdraw, 6-7.  Mr. Weinberger noted that he was

therefore in full accordance with Mr. Vera's desire to terminate him as counsel in this matter.

*Id.* at 1 ("The undersigned counsel concurs that his representation should be terminated.").

Mr. Weinberger was Mr. Vera's fifth appointed attorney.

Before the Court are Mr. Vera's May 25, 2011 Motion to Vacate, Set Aside, or

Correct Sentence and his September 3, 2013 Motion for appointment of counsel.  Pet. Writ

Hab. Corp., ECF No. 1; Mot., ECF No. 31.

## II.  Standard of Review

A federal prisoner challenging a criminal sentence may do so under § 2255 "where

the sentence (1) was imposed in violation of the U.S. Constitution or the laws of the United

States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3)

exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral

attack."  *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004).

Review on a § 2255 motion should be narrow in scope.  *Graziano v. United States*, 83

F.3d 587, 590 (2d Cir. 1996).  The Second Circuit has held that a "collateral attack on a final

judgment in a criminal case is generally available under § 2255 only for a constitutional

error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a

fundamental defect which inherently results in complete miscarriage of justice. " *Id.* at 589-

90 (quoting *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995) (internal quotation marks

omitted).  Even constitutional errors will not be redressed through a § 2255 petition unless

they have had a "substantial and injurious effect" that results in "actual prejudice" to the

petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (citations omitted);

*Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless-

error standard to § 2255 petition).

Section 2255 "may not be used as a substitute for direct appeal," *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012), meaning that "a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (citation omitted). The Court will not review claims that the petitioner failed to properly raise on direct review "unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence . . . ." *Harrington*, 689 F.3d at 129 (internal citations omitted). That rule does not apply, however, to claims of ineffective assistance of counsel. *See Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) ("[A] petitioner may bring an ineffective assistance of counsel claim [in a § 2255 motion] whether or not the petitioner could have raised the claim on direct appeal.") (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003)).

Section 2255 provides that a district court should grant a hearing to a petitioner "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). However, the language of § 2255 should not be construed as to "strip the district courts of all discretion to exercise their common sense." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). The "particular facts" of a case can be dispositive on whether a hearing is necessary. *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990).

"To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (citations omitted). To warrant a hearing on an ineffective assistance of counsel claim, "the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi*

8

*v. United States*, 586 F.3d 209, 213 (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)).

As the Second Circuit has explained:

> The procedure for determining whether a hearing is necessary is in part analogous to ... a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits [and t]he district court reviews those materials and relevant portions of the record [and] determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief.

*Id.* (internal citations omitted).  However, "a district court need not assume the credibility of factual assertions, as it would in civil case, where the assertions are contradicted by the record in the underlying proceeding." *Id.* at 214. "Airy generalities, conclusory assertions and hearsay statements will not suffice," *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (quoting *Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)), and nor will allegations that are "vague, conclusory, or palpably incredible." *Gonzalez*, 722 F.3d at 130.

## III.  Discussion

As an initial matter, the Court notes that Mr. Vera's release from prison does not moot his petition.  As long as a habeas petitioner was in custody when his petition was filed, his petition satisfies the statutory requirements of Section 2255.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("The District Court's conclusion that Spencer's release from prison caused his petition to be moot because it no longer satisfied the 'in custody' requirement of the habeas statute was in error"); *see also Concepcion v. United States*, 568 F. Supp. 766, 770 (S.D.N.Y. 1982) (rejecting a § 2255 claim because "Petitioner did not file his petition while he was incarcerated pursuant to the conviction under attack ... nor was petitioner serving a consecutive or successive sentence") (citation omitted).

Furthermore, Mr. Vera can satisfy Article III's "case or controversy" requirement because he remains subject to "collateral consequences" of his conviction, and therefore has

"a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (giving examples of collateral consequences, including the inability to vote, serve as a juror, or engage in certain businesses) (internal quotation marks omitted); *see also Spencer*, 523 U.S. at 7-8 (noting that collateral consequences of wrongful conviction are presumed to exist, even if "remote and unlikely to occur") (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)).

### A. Ineffective Assistance of Counsel

Six of the seven arguments Mr. Vera advances in support of his petition concern the effectiveness of his trial and appellate counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish a claim of ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To satisfy the first prong of the *Strickland* analysis, a petitioner must establish "that counsel's performance was outside the wide range of professionally competent assistance[.]" *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997) (internal quotation marks and citation omitted). To satisfy the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Linstadt v. Keane*, 239 F.3d 191, 199 (2d Cir, 2001). "The Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind

that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results[.]'" *Id.* at 561 (quoting *Strickland*, 466 U.S at 696-97). *Strickland* does not require counsel to advance "meritless," claims. *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("Because the double jeopardy argument was meritless, Petitioner's trial counsel was not ineffective for failing to raise it.").

 "Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1. Ineffective Assistance of Appellate Counsel for Failure to Challenge the Sufficiency and Accuracy of the Trial Transcript

Mr. Vera argues that he received ineffective assistance of counsel because his appellate attorney, Mr. Lewis, failed to challenge the sufficiency and accuracy of the missing trial transcripts. The Court disagrees.

The Second Circuit has "required a showing of prejudice by the appellant before relief based on missing documents in the record could be granted." *United States v. Weisser*, 417 F.3d 336, 342 (2d Cir. 2005). "Prejudice exists if the record is so deficient that it is impossible for the appellate court to determine if the district court has committed reversible error." *Id.* at 343 (internal quotation marks omitted). "[F]ailure to show sufficient prejudice will doom an ineffective assistance claim." *Id.; see also United States v. Garcia-De La Rosa*, 832 F.3d 128, 132 (2d Cir. 2016) (rejecting the defendant's "general claim of prejudice" as

11

"insufficient"). Mr. Vera cannot show that he was prejudiced by his counsel's failure to request a new trial on the basis of the missing trial transcript, as the Second Circuit requires.

Mr. Vera outlines the legal standard by which omissions in the record warrant a new trial, but fails to allege how he has been prejudiced by the alleged omissions in the trial transcript. Pet. Writ. Habeas Corpus, 12 (citing *United States v. Smart*, 448 F. 2d 931, 936 (2d Cir. 1971)). Mr. Vera notes that prejudice exists if the record is "so deficient that it is impossible for the appellate court to determine if the district court has committed reversible error," *Smart*, 448 F. 2d at 936, but does not provide a basis for concluding that the record was so "deficient" in his case.

In addition to failing to allege sufficient prejudice, Mr. Vera also rests his ineffective assistance of counsel claim on the fact that his lawyer failed to challenge the sufficiency and accuracy of the missing trial transcripts. Indeed, while the record is unclear as to whether Mr. Lewis eventually received the missing pages of the transcript, it is clear that Mr. Lewis did challenge the sufficiency and accuracy of the trial transcript and advocated robustly on Mr. Vera's behalf.

In his petition, Mr. Vera concedes that his appellate counsel "filed numerous motions to extend time to perfect appeal . . . [and] argued that 'were [sic] missing approximately ten (10) days of trial transcripts.'" Pet. Mot. at 10 (quoting Docket in 07-1684-cr (2d. Cir.)). Mr. Lewis addressed the missing portions of trial transcript in his Motion For an Extension of Time to Perfect Appeal and For Permission to File Out of Time, dated January 8, 2009. Mot. Ex. to Per. App., Ex. A to Pet. Mot., ECF No. 11. In a declaration supporting this motion, Mr. Lewis emphatically indicated his attempts to obtain the trial transcripts. Lewis Decl. ¶¶ 3, 5, 8, 9. He also enumerated the portions of the transcript that were out of place or missing, *id.* at ¶¶ 6, 7, and requested that the Court order the production of the missing

portions in addition to requesting a continuance until he found the transcript. *Id.* at ¶¶ 12, 13, 14.

The docket report for Mr. Vera's appeal also reveals that Mr. Lewis moved to continue the appellate proceedings because of the missing transcript several times.  *See* Docket in 07-1684-cr (2d. Cir.) (entries on 11/30/07 – granted 12/26/07; 2/26/08 – granted 3/10/08, requiring counsel to report on availability of missing transcript; 6/2/08 – granted 6/16/08 with no mention of missing transcript; 8/22/08 – granted 9/12/08 with no mention of missing transcript; 12/4/08 – granted 12/12/08).  When the Second Circuit granted Mr. Vera's final motion for extension of time, it noted that he "has had numerous extensions an ample time to prepare a brief," and that "[n]o further application for an extension will be entertained."  *Id*.

Mr. Vera further alleges that he received ineffective assistance of counsel because his appellate attorney failed to request a new trial on the basis of the missing portions of trial transcript.  Mr. Vera's appellate counsel, however, stated clearly in his Motion for an Extension of Time that "the absence of the beginning of the charge conference . . . [made it] impossible to determine what was preserved for appellate consideration in the afternoon of October 23, 2006, if anything."  Mot. Ex. to Per. App. ¶ 7.  Given that the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court cannot conclude that Mr. Lewis's assistance was ineffective.

Because Mr. Vera has not alleged sufficient prejudice, and because the record suggests that Mr. Lewis did endeavor to find a complete transcript, this ineffective assistance claim must fail.

**2.  Ineffective Assistance of Appellate Counsel for Failure to Challenge the District Court's Drug Quantity Findings**

Mr. Vera alleges that his appellate counsel was ineffective for failing to challenge the Court's drug quantity finding. The Court disagrees.

Mr. Vera was found guilty of conspiracy to possess with intent to distribute 100 grams or more of heroin and possession of heroin with intent to distribute. The Court found that Mr. Vera's conduct involved the handling of at least 700 grams of heroin, and calculated a base offense level of 30 under § 2D1.1 of the Sentencing Guidelines. The Court sentenced Mr. Vera to a term of 160 months of incarceration. *See* Mot. Reduce Sent. at 1.

In its presentence investigation, the Probation Office concluded that "the Government's evidence established that, during the course of the conspiracy, Vera helped Casiano distribute between 700 grams and 1 kilogram of heroin to his narcotics customers." PSR (April 9, 2007), ECF No. 1507-2, ¶ 18. At the April 9th hearing, however, Judge Kravitz did not simply accept the PSR's findings with respect to quantity. Tr. 9: 3-7. Instead, after acknowledging that the issue was "hotly contested," he decided to review the issue himself. *Id*.

Judge Kravitz did not "have much difficulty, frankly, finding that by preponderance of the evidence, that at least 700 grams were involved, in either direct conversations involving [Mr. Vera] or those with his co-conspirators that were reasonably foreseeable to him." *Id.* at 31: 11-16. He went "back through the recordings that were admitted at trial" and also asked the parties to brief him on the quantity in question. *Id.* at 11:24-25. Judge Kravitz noted that Mr. Vera had been present for two transactions on June 7, for which 380 grams of heroin was involved. *Id.* at 31:16-20. He also concluded that a recorded phone conversation established that Mr. Vera was involved in an attempted sale of 300 grams of heroin. *Id.* at 2-23. He finally concluded that he could rely on "numerous other things"— namely several transactions and phone calls referenced at trial—to attribute an additional 20 grams of heroin to Mr. Vera. *Id.*

As Judge Kravitz noted, the amount of heroin attributed to Mr. Vera was "hotly contested" at the sentencing hearing.  Mr. Bussert specifically objected to the 700 - 1,000 gram range, instead arguing that the evidence showed that only 100 - 400 grams were attributable to Mr. Vera, and that several of the Government's recorded phone calls made "no mention of heroin."  Tr. 24:14-15; *see also* 11:12-14 ("THE COURT: You believe, Mr. Bussert, that the quantity is more in the what, 100 to 400 gram range?/MR. BUSSERT: Yes, your Honor."); *id.* at 26:22-27:4 (MR. BUSSERT: "Mr. Vera's concern [is] that you can prove one thing at trial and come in and continue to look at these calls and impute some type of greater meaning than was there.  And if it was thought to be proved, [the Government] could have asked for a special verdict form as to these quantities but our position is at most, it would be 380 grams.").

Mr. Bussert explicitly challenged the drug quantity attributable to Mr. Vera at the sentencing hearing.  Mr. Vera has not alleged that Mr. Bussert's objections were insufficient, or his "performance was outside the wide range of professionally competent assistance[.]" *Brown*, 124 F.3d at 79 (internal quotation marks and citation omitted).

Mr. Vera has similarly failed to allege facts tending to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Brown*, 124 F.3d at 79.  Even if Mr. Bussert had failed to challenge the drug quantity, such failure would not necessarily constitute ineffective assistance of counsel.  A court may determine sentencing factors by a preponderance of the evidence, and may consider evidence adduced at trial.  *See United States v. Vaughn*, 430 F.3d 518, 525-27 (2d Cir.2005).  In Mr. Vera's case, Judge Kravitz did exactly that and determined that the drug quantity at issue was warranted by the evidence.  This claim does not entitle Mr. Vera to relief and therefore must fail.

### 3.  Ineffective Assistance of Trial and Appellate Counsel for Failure to File a Motion for New Trial Based on Correspondence From a Juror

Mr. Vera claims that his trial and appellate counsel were ineffective for failing to file a motion for a new trial based on a letter from Juror #2 in which the Juror asserted that "[h]ad [she] been a jury of one . . . Mr. Vera would have been not guilty[.]"  Writ Hab. Corp. at 15-16. The Court disagrees.

"[T]he court may grant a new trial to [a] defendant if the interests of justice so require."  Fed. R. Crim. P. 33.  This rule gives the trial court "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992).  In deciding such a motion, the court may weigh the evidence and the credibility of witnesses, but cannot "wholly usurp" the role of the jury.  *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir.2000).

Generally, "affidavits and statements by jurors may not ordinarily be used to impeach a verdict once the jury has been discharged unless extraneous influence has invaded the jury room." *Jacobson v. Henderson*, 765 F.2d 12, 14 (2d Cir. 1985) (citing *Stein v. New York*, 346 U.S. 156, 178, 73 S.Ct. 1077, 1089, 97 L.Ed. 1522 (1953)).  Federal Rule of Evidence 606(b) operates "[i]n consonance with this principle," expressly prohibiting the use of a juror's affidavit to impeach a verdict except with respect to extraneous prejudicial information or outside influence.  *Id.*  Without evidence of outside influence, "a juror's subjective perceptions cannot trigger constitutional concerns."  *United States v. Grieco*, 161 F. Supp. 683, 684 (S.D.N.Y.), *aff'd*, 261 F.2d 414 (2d Cir. 1958), *cert. denied*, 359 U.S. 907 (1959); *see also Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 861, 869 (2017) (noting that "[a] general rule has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based

16

on the comments or conclusions they expressed during deliberations," but concluding that a defendant could override the rule by showing "that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict.").

In *Grieco*, the court refused to set aside the jury's verdict against Mr. Grieco, even though a juror's letter claimed another juror was "very abusive" to her when she suggested that Mr. Grieco was not guilty, and that she wanted to "retract" her decision. *Id.* The court, explaining that the "protection of a juror's subjective freedom of expression in consultation must be assured," denied Mr. Grieco's motion. *Id.*; *see also Jacobson,* 765 F.2d at 13 (concluding that there was no basis to impeach the verdict where there allegedly was "screaming, hysterical crying, fist banging, name calling ... the use of obscene language," and a "thrown chair in the jury room").

Upon receipt of Juror #2's March 30, 2007 letter, Mr. Vera and his co-defendant, Mr. Casiano, filed a joint motion for an *in camera* inquiry of Juror #2. Pet. Hab. Corp. at 15-16. The Court denied this motion, concluding that "Juror # 2's letter does not refer to, or even remotely suggest, that, any extraneous prejudicial information was improperly brought to the jury's attention or that any outside influence was improperly brought to bear upon any juror," and that it did not indicate "any jury misconduct of any kind." *United States v. Casiano*, No. 305CR195MRK, 2007 WL 1692125, at *3-4 (D. Conn. June 7, 2007). Mr. Vera then challenged the Court's ruling on appeal, and the Second Circuit affirmed. *See United States v. Casiano and Vera*, 07-1684-cr(L), slip op. at 3 (2d Cir. Jan. 27, 2010).

Based on the Court's decision on the motion for an *in camera* inquiry, a motion for a new trial based on the same facts would not likely have been successful. Indeed, as the Government suggests, Mr. Vera's counsel likely took the Court's ruling on the *in camera* inquiry motion to clearly indicate that "any motion for a new trial would likewise have been

17

unsuccessful."  Opp. Mem., 30.  Without additional facts, which Mr. Bussert did seek in his motion for *in camera* review, a motion for a new trial would have been to no avail.

Mr. Vera has not demonstrated that the strategies employed by his trial and appellate counsel were so erroneous "that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment[,]" and "were so serious as to deprive [Mr. Vera] of a . . . trial whose result is reliable."  *Strickland*, 466 U.S. at 686.  This claim therefore does not entitle Mr. Vera to relief and therefore fails.

### 4. Ineffective Assistance of Trial Counsel for Failure to File a Motion for Severance from Co-Defendant Eduardo Casiano

Mr. Vera claims that his trial counsel, Mr. Bussert, was ineffective for failing to file a motion for severance from his co-defendant, Eduardo Casiano, on the basis of Mr. Casiano's willingness to exculpate Mr. Vera.  The Court disagrees.

In an affidavit, Mr. Bussert stated that, even if the trials were severed, he would not have called Mr. Casiano as a witness, assuming availability, as a matter of strategy.  Dec. of Todd A. Bussert at 2-3.  Specifically, Mr. Bussert said that he did "not believe [he] would have called Eduardo Casiano to testify for the defense, assuming *arguendo* that he was an available witness . . . [because he did] not believe that Mr. Casiano would have presented as a credible witness."  *Id.*

Mr. Bussert's declaration makes clear that there is no "way to establish that the result of the trial would have been different" if Mr. Bussert moved to sever the trial.  *United States v. Holmes*, 44 F.3d 1150, 1158-59 (2d Cir. 1995).  Even assuming the Court granted his motion, Mr. Vera would not have had the benefit of the allegedly exculpatory testimony.  *Id.* ("[R]arely should [severance] motions be granted; even more rarely are convictions reversed when severance motions have been denied. … Moreover, even if Frasca's attorney had moved for a severance, there is no way to know whether it would have been granted, and

even assuming it would have been granted, there is no way to establish that the result of the trial would have been different.").

Mr. Bussert failure to move to sever Mr. Vera's trial fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This claim does not satisfy the rigorous *Strickland* standard and must fail.

### 5. Ineffective Assistance of Trial and Appellate Counsel for Failure to Challenge the Sufficiency of the Evidence

Mr. Vera argues that his trial and appellate counsel were ineffective by failing to challenge the sufficiency of the evidence presented at his trial. The Court disagrees.

In order to successfully challenge a conviction on the basis of insufficiency of the evidence, a defendant must show that no "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Anglin*, 169 F.3d 154, 159 (2d Cir. 1999) (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998)). The defendant "carries a heavy burden" in this endeavor. *Id.*

In determining whether this burden has been met, the evidence must be viewed as a whole, and deference must be paid to the jury's determinations of credibility, weight of the evidence and the competing inferences to be drawn from the evidence. *Anglin*, 169 F.3d at 159. Adherence to these principles is "especially important when reviewing a conviction of conspiracy .... because a conspiracy, by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir.1992) (internal quotation marks omitted).

After reviewing the record in his case, the Court cannot conclude that "no rational trier of fact," *Anglin*, 169 F.3d at 159, could have found Mr. Vera guilty of conspiracy to possess with the intent to distribute 100 grams or more a mixture and substance containing a

detectable amount of heroin and, separately, of possession with the intent to distribute 100 grams or more a mixture and substance containing a detectable amount of heroin.  The jury reviewed evidence that could have justified such a conviction.  For example, as Mr. Vera asserts in his petition the Government produced a recording of a phone call where a co-conspirator told "Mr. Max"—an alias that might have been Mr. Vera's—to get into a taxi with heroin.  Pet. Writ. Habeas Corpus, 24.  Using this information, as well as additional recordings and testimony that the Government produced at trial, a rational jury could have convicted Mr. Vera.

Even if counsel's failure to challenge the evidence produced at trial fell outside the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, Mr. Vera cannot show that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  This claim does not entitle Mr. Vera to relief and therefore must fail.

### 6.   Ineffective Assistance of Trial and Appellate Counsel for Failure to Raise A Claim Regarding Mr. Vera's Sentence

Mr. Vera also argues that his trial and appellate counsel were ineffective by failing to argue that his sentence was unduly harsh, in retaliation for his decision to stand trial.  The Court disagrees.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  A "sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal." *Izaguirre v. Lee*, 856 F. Supp. 2d 551, 572 (E.D.N.Y. 2012) (citing *Wasman v. United States*, 468 U.S. 559, 567-68 (1984) (citing, inter alia, *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).

In *Pearce*, the Supreme Court evaluated a claim that a defendant was given an unduly harsh sentence after successfully requesting a new trial. *Pearce* held that, under the Due Process Clause, "vindictiveness against a defendant … must play no part in the sentence he receives." *Id.* at 725. In *Pearce* and later cases, the Supreme Court held that, when a greater sentence is imposed after a defendant chooses to exercises a constitutionally protected right, courts will presume that the increased punishment was imposed for a vindictive purpose. *See Alabama v. Smith*, 490 U.S. 794, 799 (1989) (citing *Pearce*, 395 U.S. at 726). That presumption must then be rebutted by objective information justifying the increased sentence. *Id.* The presumption would only apply, however, when "there is a reasonable likelihood[,] that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Smith*, 490 U.S. at 799-800 (internal citations omitted); *see also Izaguirre*, 856 F.Supp.2d at 574 (using the *Pearce* framework to evaluate a *habeas* petitioner's claim that he was sentenced in retaliation for going to trial).

In *Izaguirre*, there was a "reasonable likelihood" of vindictiveness because the sentencing judge had "explicitly stated to Petitioner, 'Mr. Izaguirre, do you understand that if you are found guilty after this trial you will do 25 years in prison?,'" and then sentenced him to 25 years in prison, which was the statutory maximum. *Izaguirre*, 856 F. Supp. 2d at 574 ("Although it is possible that no actual vindictiveness existed on the part of the County Court[,] the pre-trial announcement that Petitioner would receive the statutory maximum sentence followed by the posttrial issuance of the promised statutory maximum sentence (which was discretionary, rather than mandatory) certainly raises a reasonable likelihood of actual vindictiveness.").

However, the "mere fact" that a petitioner received a higher sentence compared to his co-defendants, or compared to what he was offered during plea negotiations, is not enough to

indicate vindictiveness. *Archie v. Strack*, 378 F. Supp. 2d 195, 200 (W.D.N.Y. 2005) (citing *Corbitt v. New Jersey*, 439 U.S. 212, 219, 223 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.... We discern no element of retaliation or vindictiveness against [appellant] for going to trial"); *Bordenkircher*, 434 U.S. at 364 (the fact that sentencing practices may have a "discouraging effect on the defendant's assertion of his trial rights [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.") (internal citations omitted).

The transcript of Mr. Vera's sentencing hearing does not indicate that the Court was vindictive in its sentencing of Mr. Vera, nor does Mr. Vera point to any evidence of vindictiveness.  Mr. Vera's sentence itself raises no suggestion of impermissible retaliation, because it fell within the guidelines range of 135-168 months.  An argument about the vindictiveness of the Court's sentence would likely fail, and *Strickland* does not require a lawyer to advance a "meritless" argument.  *Aparicio*, 269 F.3d at 99.  This claim does not entitle Mr. Vera to relief and therefore must fail.

**B.  The Government Violated Mr. Vera's Constitutional Rights by Failing to Comply with Its Obligations Under 18 U.S.C. § 3500 (the "Jencks Act")**

Mr. Vera argues that the Government violated his constitutional rights by failing to comply with the Jencks Act.  With the exception of an ineffective assistance of counsel claim, an argument "may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang*, 506 F.3d at 166 (citation omitted).  When Mr. Vera appealed to the Second Circuit, he did not raise this argument.  *See* Appellant's Br. in *U.S. v. Jose Santiago Vera, also known as Max, and Eduardo Casiano,* 07-1684-cr, 2009

(2d Cir.), *available at* WL 5909556.[3]  The Court, therefore, cannot consider this argument now.

### C.  Mr. Vera's Request for a Hearing

Mr. Vera's motion can be denied without a hearing.  Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). "The motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez*, 722 F.3d at 131.  Mr. Vera has not set forth sufficient facts to justify a hearing on his claims.  Even when viewing the "record in the light most favorable to the petitioner," *Puglisi*, 586 F.3d at 213, Mr. Vera has not made "a prima facie case for relief" on his ineffective assistance of counsel claim. *Id.* ("The procedure for determining whether a hearing is necessary is in part analogous to ... a summary judgment proceeding. [The district court] determines whether … the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief.")   The Court cannot hear his additional claim, which concerns violations of the Jencks Act, because Mr. Vera did not raise it on appeal.  For these reasons, a hearing is not necessary in this case.

The Court determines that Mr. Vera's request for appointed counsel (ECF No. 34) should be denied.  Just as a hearing would not change the Court's analysis, appointing

---

[3] Mr. Vera raised three issues on appeal: "1. Whether the court's removal of the sole Hispanic juror over the objections of the defendants due to the juror's awareness of the official court interpreter's error concerning the translation of the cooperator's testimony was an abuse of discretion? 2. Whether the Court should have, at minimum, made inquiry of a trial juror when post-sentencing that trial juror writes a letter to the court and states that she came to court to see 'what everyone else saw,' thus suggesting improper influence or information was inside the jury room? 3. Whether the convictions should be reversed and a new trial ordered due to the court's admission of expert testimony from the case agent on the meaning of cooperation agreements and proffer agreements in evidence when the expertise is offered to bolster the credibility of testifying cooperators?"  *See id.*

counsel would not make a difference in the Court's determination of this petition.
Additionally, because Mr. Vera's first appointed counsel, Mr. Weinberger, evaluated his
claims and provided assistance in briefing one of them, the petition—and this Court's
opinion—already reflects the assistance of appointed counsel.

**IV. Conclusion**

For the reasons stated above, Mr. Vera's Motion to Vacate, Set Aside, or Correct
Sentence is DENIED without hearing.  Because Mr. Vera has not made a "substantial
showing" of denial of a constitutional right, a certificate of appealability will not issue. *See*
28 U.S.C. § 2253(c)(2).  The Clerk of Court is directed to close this case.

SO ORDERED at Bridgeport, Connecticut this 19th day of July 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE